Markowitz, P. J.
(dissenting). I dissent and would reverse the conviction.
The statute we are dealing with (Penal Law, § 240.25) is addressed to offensive behavior in public places intended by the actor to harass, annoy or alarm others. However, the allegedly offensive conduct — be it deed or utterance — must be carefully examined in the context in which it was performed, lest the application of the statute bring about constitutionally incompatible results, or restraints never intended by the Legislature when it conceived harassment as an offense.
The background of instant case suggests the presence of a triangular labor dispute. On the one hand there appears to be a bitter conflict between two factions of a union. Defendant Carvelas is an undoubted leader of the dissident faction, defendant Manos in the companion case is one of his supporters. On the other hand, there appears the usual union-management sitúa *619 tion with management favoring perhaps the “ regular ” faction of the union.
Against this tapestry, the language used must be examined.
To William Hamel, the headwaiter of the hotel banquet department, Carvelas (who was shop steward) hurled the epithets “ Nazi bastard ”, and “ dictator ”, and said of him “ we have to get rid of this damn Nazi ” and that “ I don’t take orders from a Nazi bastard ”. Manos advised him that he (Hamel) was “ just shit to me ”, called him a “ drunk ” and “ drunkard”, referred to him as a “drunkard”, “Nazi bastard”, “ dictator ”, .and “ son-of-bitch ”, and boasted that he “got bigger balls than Hamel ”.
To Bogdan, a Hamel subordinate, Carvelas is also accused of saying “I’ll break you in half, you bastard ”, “ son-of-a-biteh ”, and “ if I get in I will take care of you ”.
Terrible words, perhaps, but are they so offensive that they may be characterized as an injury to the public peace? Assuming even that the profanities, insults and obscenities used might under ordinary circumstances come within the purview of harassment, the background herein of a heated labor dispute requires the situation to be viewed in a different light.
Offensive language used to express an opinion — in labor, political, or other constitutionally protected matters — regardless how revolting and tasteless it may be — must be afforded the same First Amendment license that is applied to more restrained utterances of opinion. Defendants did not like the management — they considered management representatives to be dictatorial and said so. The truthfulness or lack thereof of the statements is not in issue. The only important thing is “ Were they expressing an opinion? ” If so, the gutter language and the odious behavior are of no significance. The utterances are constitutionally protected despite whom they offend.
Situations parallel to those at bar appear in cases relating to N. L. B>. B. jurisdiction in which distinction is made between threats, impulsive behavior and dirty language arising out of genuine labor conflicts, and unconnected verbal or physical violence justifying management action. It was stated in N. L. R. B. v. Thor Power Tool Co. (351 F. 2d 584) (where a management representative was called a “ horse’s ass ” and told to “ shut your----------mouth ”), that “ remarks cannot be made in a vacuum ”. Where they merely furnish an excuse for management to eliminate agitating employees, they are part of a protected “ labor conflict ”. See also, N. L. R. B. v. Leece-Neville Co. (396 F. 2d 773) (“angry advance of manager”); and *620 N. L. R. B. v. Yazoo Val. Elec. Power Assn. (405 F. 2d 479) (challenge to fight couched in obscene language).
Of particular significance because of its similarity to the matters here in question is Crown Cent. Petroleum Corp. v. N. L. R. B. (430 F. 2d 724) where references to a management representative as ‘ ‘ Castro ’ ’ and a ‘ ‘ totalitarian dictator ’ ’ were held to be protected, even though they may have been unjustified, since they arose out of genuine labor-management tensions.
Aside from what was said, reversal is also mandated by the fact of where it was said. The offense of harassment can only be committed in a public place. A waiter’s locker room — by its very term- — -is a highly private locale. To consider it otherwise, is a distortion of the statute which I believe was never intended by the draftsmen. To -say that profane language is so out of place .in a locker room reserved for working class males that it may be characterized as an offense in a “ public place ”, defies credulity.
There are appropriate tribunals for the settlement of labor-management conflicts. The Criminal Court is not one of them. The situs, the context in which the utterances were made, and the fact that they border on opinion — all combine to vitiate the criminal nature of the words.
Accordingly, it is my opinion that the conviction should be reversed and the complaint dismissed.
Lupiano and Quinn, JJ., concur in Per Curiam opinion; Markowitz, P. J., dissents in memorandum.
Judgment affirmed.